UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DURANCZKY BAXTER | CIVIL ACTION NO. 04-2486 |
| versus | JUDGE WALTER |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Duranczky Baxter, a minor at the time of his application, alleges disability due to emotional, behavioral and learning problems. (The child's name is listed on agency documents as Duranc*zky*, but school records and forms completed by the child's mother spell it Duranc*zyk*. The court will employ the name Duranczky to be consistent with the agency proceedings.) Jacqueline Baxter, Duranczky's mother, applied for disability benefits on behalf of the child. ALJ Nancy Griswold denied the claim, and the Appeals Council found no basis to review her decision. Ms. Baxter filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**The ALJ's Decision**

A child is considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or last a continuous period of at least one year. 42 U.S.C. §

1382(c)(a)(3)(C)(i).  The Commissioner has published regulations to implement that standard.  Those regulations require a three-step evaluation process.  20 C.F.R. § 416.924.

The first step is to determine whether the child has engaged in substantial gainful activity.  If not, the evaluation continues to the second step, which involves a determination of whether the child has an impairment or combination of impairments that is "severe," meaning more than a slight abnormality that causes only minimal functional limitation.  The third step involves a determination of whether the child's impairment meets, medically equals, or functionally equals the severity of a listed impairment.  § 416.924a(d); Sullivan v. Zebley, 493 U.S. 521, 526 (1990).  If so, and the twelve month durational requirement is met, the child is disabled.  If not, the child is not disabled.  § 416.924(d)(1) and (2).

The ALJ found that Duranczky passed the first two steps of the evaluation because (1) he had not been working and (2) he suffered from major depression with psychotic features, impulse control disorder, and oppositional defiant disorder ("ODD"), impairments that are severe.  She found at step three that Duranczky's impairments did not meet or medically equal a listed impairment. She then proceeded to determine whether Duranczky had impairments that functionally equaled a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains.  The domains, listed in § 416.926a(b)(1), are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

(4) moving about and manipulating objects

(5) caring for yourself

(6) health and physical well-being.

The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if he has an *extreme* limitation in *one* domain or a *marked* limitation in *two* domains. § 416.926a(d). The levels of severity are further described in the regulation.

A marked limitation is "more than moderate" but "less than extreme." It interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. § 416.926a(e)(2).

An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities. Extreme is the rating given to the worst limitations, but it does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416.926a(e)(3).

The ALJ found that Duranczky had *no* limitation in the domains of acquiring and using information, moving and manipulating objects, and health and physical well-being. She found that he had a *moderate* limitation of functioning in the domain of attending and completing tasks, as well as in the domain of interacting and relating with others. The child did not have an extreme limitation in any domain and did not have a marked limitation in two domains, so he was found to be not disabled within the meaning of the regulations.

**Issues on Appeal**

Plaintiff argues that there is not substantial evidence to support the ALJ's finding that Duranczky has no limitation in the domains of acquiring and using information. She makes a similar attack on the ALJ's findings that the child has only a moderate limitation in the domains of (a) attending and completing tasks and (b) interacting and relating with others.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**The Evidence**

The child was sixteen years old and enrolled in the eighth grade at the time the ALJ decided the claim in December 2002. School records from the Bienville Parish school system show that the child was evaluated in 1996 when he was ten years old and repeating the third grade. The child had also been retained in the first grade. The third grade teacher reported concerns in all academic areas and regarding the child's peer relationships and classroom behavior. The child was described as "very aggressive" and often fought with others, which interfered with his academic progress. The child's teacher at the time of the review stated that the child's behavior was not causing problems in the classroom. Observations of the child showed him to be attentive as the teacher gave instruction, and he worked without interruption and did not engage in off task behaviors. Based on Louisiana Department of Education guidelines, the child was deemed not eligible for special education services. Tr. 93-100.

School officials performed another evaluation in 2001, when the child was in the seventh grade. Records showed the child had been promoted to the sixth and then the seventh grade for reasons other than academics, although he had failing grades in reading, mathematics, science and language arts. His attendance records showed excessive absences, many of which were due to out of school suspension. Nine discipline referrals were documented between September 5 and October 26, 2000. They ranged from tardiness to disturbance in the classroom to leaving a bus without permission.

One teacher reported that the child attended only three days during the fifth six-week grading period of the most recent school year. When present, he failed to perform assignments, and he often became disruptive and defiant when verbal efforts were made to correct him. Teachers generally described him as often absent and uncooperative. He could, however, be motivated with the opportunity to participate in football, and he responded well to one teacher because of a relationship related to the sport. He threatened one female teacher, but he was described as "polite and nice" in football activities. The child's mother reported that he did not respond to discipline but was socially engaged with peers and liked sports including football, basketball and baseball. Tr. 84-86.

Composite test results suggested average skills in oral expression, moderate deficits in listening comprehension, and severe deficits in reading, math and writing. The school psychologist reported that the child displayed "adequate attention to tasks in the one-to-one setting" but was quiet. His pace ranged from slow to typical to impulsive when he was attempting tasks. His overall performance "ranged from a moderate deficit to average functioning." A report submitted by the child's mother indicated that the child enjoyed singing and sports, participated in some clubs or organizations, and his social interaction with siblings was considered typical. Yet, he was also reported as not getting along with other kids and getting into fights. Tr. 87-89.

Intelligence testing indicated that the child had low average to average cognitive abilities to acquire new information and to problem solve in the academic and community

setting. The child's instructional levels were scattered from the first to sixth grade levels in writing, math and reading. A need for special education was found. Tr. 83 and 89-90.

Two of the child's teachers completed questionnaires in May 2002. Vicki Solomon, a reading and science teacher, stated that the child was then in the eighth grade and classified as a special education student, but he was in regular classes. She found that the child had "no deficiency" with respect to his attention span and concentration, which she said were "equal to that of any other student in the class." The problem, as she saw it, was that the child was lazy and had excessive absences. She believed that, if he wanted to, he could "turn in a paper with high scores with no help at all" and had the "ability to progress in reading, writing, and math skills, but chooses not to." The child was often late and disregarded classroom rules, but Ms. Solomon reported that he had never been violent in her class and was a "very sweet boy and is always apologetic when he ends up in trouble." She believed that the special education assignment was "due to behavioral problems and not academic." Tr. 103-06.

M. B. Nevels reported that the child could work independently of teacher supervision, understand and complete assignments on time and progress in his learning skills if he wanted to. The child was found, however, to lack motivation and have a very short attention span. Like Ms. Solomon, Nevels reported that the child was "quick minded" and "can be a very good learner" when motivated. Tr. 107-08.

The child was evaluated in December 2000 by a psychiatrist, Jody Meek, M.D. Plaintiff had good eye contact and was calm and cooperative during the interview, although he spoke in a low mumbled voice at times. He answered questions appropriately but with

little secondary elaboration. He reported occasional thoughts of hopelessness and admitted that, about two months earlier, he had fleeting thoughts of suicide and contemplated jumping off a bridge. His mother reported during the interview that she believed some of his behavior stemmed from a poor relationship with his father, whom she divorced when the child was young and who had recently told the child he did not want to be in his life anymore. The child reported that he had some good friends with whom he was close. Dr. Meek diagnosed depressive disorder and prescribed Zoloft. Tr. 113-15.

The child was hospitalized at Brentwood, a psychiatric facility, in March 2001 because of suicidal ideation. He was admitted to an adolescent unit and seen in individual, group and family therapy. The diagnosis on discharge was major depression, impulse control disorder, and oppositional defiant disorder with paranoid features. He first refused to take medication or comply with treatment but, when he realized he had to do so to be released, he became much more serious and participated in the group. Tr. 124-29.

Thomas Staats, Ph.D., performed a consultative psychological assessment in October 2001. The child "followed directions adequately" during testing in the office. His thinking appeared to be intact, logical and coherent. He demonstrated age-appropriate knowledge of simple word definitions and could spell simple words correctly. His fund of general information appeared adequate. He was able to interact in an age-appropriate manner and exhibited marginal social judgment but somewhat below-age adaptive behaviors. He was able to maintain "marginal" attention and concentration and demonstrated "poor" persistence. He denied being a danger to himself or others, but his mother reported that he still fights

occasionally. Dr. Staats' diagnosis was recurrent major depressive disorder with psychotic features, as well as learning disorder. He opined that the child's prognosis was poor. Tr. 146-147.

**Attending and Completing Tasks**

Plaintiff complains that the ALJ erred in finding that the child had a "less than marked" limitation of functioning in the area of attending and completing tasks. The ALJ, in this portion of her decision, looked to the teacher's reports that indicated the child could complete his work and had an attention span and concentration equal to that of other students, but he simply refused to complete assignments. The ALJ also pointed to Dr. Staats' note that the child followed directions adequately, but demonstrated marginal concentration and poor persistence. She also noted that her conclusion was supported by the report of a state agency physician (who reviewed the records but did not examine the child) that the child had a less than marked limitation in this domain.

Plaintiff points to other aspects of the record that indicate a more significant degree of limitation in this domain and argues that the ALJ erred when she did not find a marked limitation. There are statements by Dr. Staats and elsewhere in the record that could lead a reasonable mind to conclude that the child had a marked limitation in this domain, but there is also the evidence cited by the ALJ (and otherwise described in the summary of the record provided above) that indicate a less severe moderate limitation is more appropriate. The court attempted, above, to fairly summarize the evidence as a whole, and that summary revealed evidence that could support either side of this argument and about which reasonable

minds might differ.  Under those circumstances, the ALJ's conclusion is not subject to judicial reversal under the deferential substantial evidence standard, which requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse, 925 F.2d at 789.

**Interacting and Relating with Others**

The ALJ found that Plaintiff had a moderate and less than marked limitation of functioning in the area of interacting and relating with others. The regulation states that relevant considerations include how the child initiates and sustains emotional connections with others for practical or social purposes, whether by facial expression, gestures, actions or words.  The interaction may be one-on-one or in groups.  The child should be able to respond appropriately to a variety of emotional and behavioral cues and be able to speak intelligibly so that others can understand him.  20 C.F.R. § 416.926(a).

The ALJ acknowledged that the child has demonstrated significant problems in this area, including fights with peers and refusal to comply with school rules. On the other hand, the ALJ noted, Plaintiff played sports with friends, and his mother testified that he helps with household chores.  (Plaintiff challenges the ALJ's supporting statement that the child plays basketball with friends, but the record contains several references to the child playing organized football and other group sports with friends.)  A teacher described the child as "very sweet" and denied any episodes of violence in her class.  The ALJ did not ignore the limitation in this area, but she chose to assign a moderate rather than a marked degree of limitation.  That decision was consistent with that of the state agency physician.  Tr. 150.

Once again, the evidence is mixed and reasonable minds could perhaps differ, but that is insufficient for the court to overturn the ALJ's assessment of this inherently subjective issue when there is substantial evidence to support the conclusion.

**Acquiring and Using Information**

The ALJ concluded that Plaintiff had no limitation in the domain of acquiring and using information. Plaintiff's challenge on this issue is more compelling, given the child's poor academic record. The regulations in Section 416.926(a) give examples of limitations that will be considered, though they are not necessarily marked or extreme. Those examples include an inability to demonstrate understanding of words about space, size or time; inability to rhyme words or sounds; difficulty recalling important things learned in school yesterday; difficulty solving mathematics questions; or talking only in short, simple sentences and having difficulty explaining what you mean.

Duranczky certainly has some academic problems, but the record does not reflect the degree of limitations suggested by the examples in the regulations that would indicate a limitation tending towards a marked or extreme limitation. Even if the court were to find that a moderate or even marked limitation were the only one appropriate given the record, that would not yield a conclusion of disabled. That conclusion requires a marked limitation in two domains or extreme limitation in one domain. For these reasons, the ALJ's ultimate decision that the child is not disabled within the meaning of the regulations is supported by substantial evidence.

Accordingly;

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **AFFIRMED**, and the Plaintiffs' Complaint be **DISMISSED WITH PREJUDICE.**

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ. Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 15th day of December, 2005.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE